1
2
3
4
5
6          **IN THE UNITED STATES DISTRICT COURT**
7          **FOR THE DISTRICT OF ARIZONA**

8  Junior Gomez,

9                    Petitioner,                    No. CV 25-03255 PHX JJT (CDB)

10  v.                                               **REPORT AND**
                                                     **RECOMMENDATION**
11  John Doe, in his official capacity as Facility
    Administrator of the Florence Service            **A Number 245 714 901**
12  Processing Center, et al.,

13                    Respondents.

14

15  **TO THE HONORABLE JOHN J. TUCCHI:**

16          Petitioner Pedro Junior Gomez, who is represented by counsel, seeks relief

17  pursuant to 28 U.S.C. § 2241. Gomez is currently detained by the United States

18  Department of Homeland Security ("DHS") Immigration and Customs Enforcement

19  ("ICE"), at the Florence Service Processing Center in Phoenix, Arizona.

20          **I.      Background**

21          Gomez is a native of Honduras. He asserts he "fled Honduras due to death threats

22  from the notorious 18th Street gang," and that he "served in the Honduran army and

23  refused to abuse his position in the army to provide benefits to the gang, leading to the

24  gang's threats." (ECF No. 10 at 2). He further asserts that "[w]hile in [military] service,

25  members of the violent 18th Street gang demanded that he provide military equipment to

26  them. When [he] refused, they threatened to kill him," and that "as a result, [Gomez]

27  spent several years in hiding before fleeing to the United States. (ECF No. 10 at 11).

28

1    Gomez alleges he "came to the U.S. with the intention of seeking asylum." (ECF No. 10
2    at 2).

3        DHS detained and inspected Gomez at Eagle Pass, Texas, on January 3, 2024.
4    (ECF No. 10-2 at 1).[1] Gomez was found inadmissible and subject to removal pursuant to
5    § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") (8 U.S.C.
6    § 1182(a)(6)(A)(i)), as an "alien present in the United States without being admitted or
7    paroled, or who arrived in the United States at any time or place other than as designated
8    by the Attorney General." (*Id.*). On January 4, 2024, Gomez was released from custody
9    on recognizance by means of a DHS "Notice of Custody Determination." (ECF No. 10-
10   3). The Notice of Custody Determination, citing § 236 of the INA, codified at 8 U.S.C.
11   § 1226, advised that Gomez would be released on his own recognizance "pending a final
12   administrative determination" in his case. (*Id.*). At the time of his release Gomez was
13   issued a Notice to Appear ("NTA"), placing him in removal proceedings pursuant to
14   § 240 of the INA. (ECF No. 10-2 at 1). The NTA required him to appear before an
15   Immigration Judge ("IJ") in Dallas, Texas, on July 22, 2025. (*Id.*). Gomez contends: "On

16

17       [1] The term "inspection" refers to a process that occurs at the border or other ports of
18   entry, when immigration officers assess whether a noncitizen may lawfully enter the United
     States. *See Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that
19   "inspection and authorization" must "take place at a 'port of entry'" for an individual to be
     considered to have "lawfully entered"); *Lepe v. Andrews*, ___ F. Supp. 3d ___, 2025 WL
20   2716910, at *6 (E.D. Cal. Sept. 23, 2025). *See also* 8 C.F.R § 235.1(a) ("Application to lawfully
     enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry
21   when the port is open for inspection."). Not every encounter with an immigration officer
     constitutes an inspection; it must involve the formal process of determining admissibility.
22   *Jimenez v. FCI Berlin, Warden*, ___ F. Supp. 3d ___, 2025 WL 2639390, at *7 (D.N.H. Sept. 8,
     2025). The inspection process under § 1225(b)(1) includes expedited removal procedures for
23   noncitizens deemed inadmissible due to fraud, misrepresentation, or lack of valid documentation
24   under 8 U.S.C.A. § 1182(a)(6)(C) or (a)(7). These noncitizens are typically ordered removed
     without further hearing or review unless they claim asylum or express a fear of persecution, in
25   which case they are referred for an asylum interview. *Rodriguez v. Bostock*, 349 F.R.D. 333
     (W.D. Wash. 2025). Because Gomez was apprehended, detained, determined to be inadmissible
26   but then released into the United States on recognizance, i.e., conditional parole, pursuant to
27   § 1226, and served with a Notice to Appear placing him in § 240 removal proceedings, the Court
     may presume he was "inspected" at Eagle Pass, Texas, a border port of entry which is open 24
28   hours per day, seven days per week.

information and belief, Petitioner fully complied with all ICE check-ins and other requirements after his release from custody." (ECF No. 10 at 12).

Gomez intended to submit an application for asylum when he appeared for a status hearing in the Dallas Immigration Court ("EOIR") on July 22, 2025, the date set in the NTA after he had been detained and when he was released on recognizance. (ECF No. 10 at 2)However, instead of allowing him to proceed on an application for asylum, at the hearing "Respondents moved to dismiss the case, and the immigration court dismissed Petitioner's [§ 240] proceedings." (ECF No. 10 at 12). The dismissal was granted "without prejudice." (ECF No. 10-4 at 3).[2]

---

[2] The order granting the DHS's motion to dismiss cites 8 C.F.R. § 1239.2(c), which is titled "Cancellation of Notice to Appear." Section 1239.2 states, in pertinent part (emphasis added):

> (b) Ordering termination or dismissal. .... An immigration judge or Board member may enter an order of dismissal in cases where DHS moves for dismissal pursuant to paragraph (c) of this section. ...
> (c) Motion to dismiss. After commencement of proceedings pursuant to 8 CFR 1003.14, government counsel or an officer enumerated in 8 CFR 239.1(a) may move for dismissal of the matter *on the grounds set out under 8 CFR 239.2(a)*. Dismissal of the matter shall be *without prejudice to the alien* or the Department of Homeland Security.

***

> (e) Warrant of arrest. When a notice to appear is canceled or proceedings are terminated under this section *any outstanding warrant of arrest is canceled*.

Section 239.2(a) of 8 C.F.R. provides:

(a) Any officer authorized by § 239.1(a) to issue a notice to appear may cancel such notice *prior to jurisdiction vesting with the immigration judge* pursuant to § 3.14 of this chapter provided the officer is satisfied that:

> (1) The respondent is a national of the United States;
> (2) The respondent is not deportable or inadmissible under immigration laws;
> (3) The respondent is deceased;
> (4) The respondent is not in the United States;
> (5) The notice was issued for the respondent's failure to file a timely petition as required by section 216(c) of the Act, but his or her failure to file a timely petition was excused in accordance with section 216(d)(2)(B) of the Act;
> (6) The notice to appear was improvidently issued, or
> (7) Circumstances of the case have changed after the notice to appear was issued to such an extent that continuation is *no longer in the best interest of the government*.

The IJ's decision indicates that no credible fear interview was conducted. (ECF No. 10-4 at 1-2). Gomez was not advised that the purpose of the dismissal was to place him in expedited removal proceedings. (*Id.*).[3] After the dismissal of his § 240 proceedings ICE agents arrested Gomez. (ECF No. 12 at 10).[4]

---

This section also provides:
(c) Motion to dismiss. After commencement of proceedings pursuant to 8 CFR 1003.14, ICE counsel, or any officer enumerated in paragraph (a) of this section, may move for dismissal of the matter on the grounds set out under paragraph (a) of this section.

\*\*\*

(e) Warrant of arrest. When a notice to appear is canceled or proceedings are terminated under this section any outstanding warrant of arrest is canceled.
Section 1003.14 of 8 C.F.R. provides:
(a) Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed. However, *no charging document is required to be filed with the Immigration Court to commence bond proceedings pursuant to §§ 1003.19, 1236.1(d) and 1240.2(b) of this chapter.*

[3] Notably, had Gomez been placed in expedited removal proceedings DHS would have been required to allow him to express a credible fear of being removed to Honduras which, if found colorable, would have required he be placed back into § 240 proceedings.

[4] Respondents allow that the arrest was not pursuant to a warrant:

Despite Petitioner's allegations, his arrest did not violate his Fourth Amendment rights. The legality of an arrest of an alien based upon civil immigration violations is well established. *Abel v. United States*, 362 U.S. 217, 230 (1960) ("Statutes authorizing administrative arrest to achieve detention pending deportation have the sanction of time."). The statute authorizing the warrantless arrest of an alien by an ICE officer does not expressly require probable cause but authorizes the arrest if the officer "has reason to believe" that the alien is in the United States in violation of a law governing admission or removal of aliens *and* is likely to escape before a warrant is issued. 8 U.S.C. § 1357(a)(2). ICE had reason to believe Petitioner was unlawfully present in the United States without having been admitted. Therefore, his arrest did not violate his Fourth Amendment rights

(ECF No. 12 at 10) (emphasis added). However, ICE did not have any reason that Gomez was likely to "escape," and when Gomez appeared for his hearing he was in the United States on conditional parole, with the Government's knowledge and consent. There is no document in the record indicating that Gomez's release on recognizance, i.e., his de facto parole, has been revoked; revocation of parole requires reasonable notice to the noncitizen. *E.g., Mata Valasquez v. Kurzdorfer*, ___ F. Supp. 3d ___, 2025 WL 1953796, at *10 n.9 (W.D.N.Y. July 16, 2025).

On July 24, 2025, Gomez filed an appeal with the Board of Immigration Appeals ("BIA"). (ECF No. 10-5 at 1-2). Gomez appealed the DHS's dismissal of his immigration case. (ECF No. 10-5). On July 25, 2025, Gomez was transferred to a detention center in Florence, Arizona.

With regard to Gomez's appeal to the BIA, DHS filed its brief on September 24, 2025, and Gomez filed his brief on September 28, 2025; the appeal is currently pending. *See* https://acis.eoir.justice.gov/en, *last visited* Oct. 31, 2025. At this time a decision on such matters before the BIA can take six months to two years.

At no time since his entry into the United States has Gomez been arrested or charged with any criminal offense.

**II.    Claims for Relief**

Gomez contends his current detention is in violation of his right to procedural and substantive and due process. He further contends his detention is only proper under 8 U.S.C. § 1226, which requires that he be given a bond hearing pursuant to 8 U.S.C. § 1226(a). Gomez asks the Court to: "Declare that Petitioner's re-detention without an individualized determination violates the Due Process Clause of the Fifth Amendment;" "Declare that Petitioner's detention without bond is unlawful;" "Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a) or the Due Process Clause within seven days;" "Issue an Order prohibiting the Respondents from transferring Petitioner from the district without the court's approval;" and "Enjoin Respondents from re-arresting Petitioner unless a hearing is held before a neutral adjudicator to determine whether his re-detention is justified." (ECF No. 10 at 17).

Respondents assert that Gomez is being detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Respondents aver: "On July 22, 2025, Petitioner appeared at his scheduled hearing [in his removal proceedings] in Dallas, Texas. The Department of Homeland Security (DHS) moved to dismiss the case, and the immigration court dismissed Petitioner's proceedings." (ECF No. 12 at 2). Despite the statement that

1  Gomez's removal proceedings were dismissed on Respondents' motion, Respondents
2  assert Gomez is "currently in removal proceedings under Immigration and Nationality
3  Act ("INA") § 240, 8 U.S.C. § 1229a and is detained in Immigration and Customs
4  Enforcement ("ICE") custody under 8 U.S.C. § 1225(b)(2)(A)."[5] (ECF No. 12 at 1).

5      ### III.    Relief Pursuant to § 2241

6      The Court may issue a writ of habeas corpus pursuant to § 2241 if the petitioner is
7  in custody "in violation of the Constitution or laws or treaties of the United States." The
8  essence of habeas corpus is an attack by a person in custody upon the legality of that
9  custody. *E.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("the traditional function of
10  the writ is to secure release from illegal custody."). Gomez avers, *inter alia*, that his
11  detention is in violation of his federal constitutional rights to due process of law and in
12  violation of the statutory framework governing detention and removal proceedings.
13  government

14      Civil immigration detention is legal only when the underlying procedure it is in
15  aid of is legal; otherwise, civil detention is unconstitutionally punitive. At its core, the
16  legality and constitutionality of immigration detention is inextricably intertwined with the
17  legality of the underlying immigration process resulting in the detention. If this were not
18  true a noncitizen would be deprived of the "uncontroversial" "privilege of habeas
19  corpus," which entitles an individual detained by the government to a "meaningful
20  opportunity" to demonstrate that they are "being held pursuant to the erroneous
21  application or interpretation of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 799
22  (2008) (internal quotations omitted). *See also INS v. St. Cyr*, 533 U.S. 289, 302 (2001);
23  *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Ex parte Endo*,

---

24  [5] Subsection (b)(2)(A) of §1225 provides:
25  (2) Inspection of other aliens
26      (A) In general
      Subject to subparagraphs (B) and (C), in the case of an alien who is an
27      applicant for admission, if the examining immigration officer determines
      that an alien seeking admission is not clearly and beyond a doubt entitled to
28      be admitted, the alien shall be detained for a proceeding under section
      1229a of this title.

323 U.S. 283, 285, 297, 302-04 (1944). In *Boumediene*, the Supreme Court held the Suspension Clause "ensures that, except in period of formal suspension [of the writ of habeas corpus], the Judiciary will have a time-tested device, the writ, to maintain the delicate balance of governance that is itself the surest safeguard of liberty." 553 U.S. at 745 (internal citations and quotations omitted).[6]

Respondents contend the Court lacks jurisdiction to decide Gomez's claims, citing 8 U.S.C. § 1252. The Court does have jurisdiction over the petition. Section § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." *See also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Section 1252(g) is a narrow statutory provision that concentrates on the three discrete actions specifically stated in the statute. *See, e.g.*, *Reno*, 525 U.S. at 482. The Supreme Court has "rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020), *quoting Reno*, 525 U.S. at 482. Additionally, the Ninth Circuit Court of Appeals recently reinforced the conclusion that "[i]nstead of sweeping in any claim that can technically be said to arise from the three listed actions," § 1252(g) refers to "just those three specific actions themselves." *Ibarra-Perez v. United States*, __ F. 4th __, 2025 WL 2461663, *7 (9th Cir. 2025) (internal quotations omitted).

Gomez challenges his detention, pursuant to § 2241, not the adjudication of any request for relief for removal, the commencement of proceedings, or the placing of Gomez in removal proceedings, nor the execution of any order of removal. Gomez's removal proceedings have been terminated, i.e., dismissed on Respondents' motion, although the dismissal is not administratively final. Respondents aver that at this time

---

[6] The Suspension Clause is found in Article I, Section 9, Clause 2 of the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

1    there is no order of removal against Gomez and that Gomez is not in expedited removal
2    proceedings. Accordingly, § 1252(g) does not deprive the Court of jurisdiction over
3    Gomez's habeas petition challenging his detention without a bond hearing. Whether or
4    not Respondents have violated the laws and the United States Constitution in the process
5    of detaining Gomez is a question falling squarely within the Court's habeas jurisdiction
6    and, accordingly, the Court has jurisdiction over the § 2241 petition. *See Singh v. Holder*,
7    638 F.3d 1196, 1202 (9th Cir. 2011), *citing Demore v. Kim*, 538 U.S. 510, 516-17 (2003).
8    *See also Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 772 (N.D. Cal. 2019).

9          Respondents also assert the Court is without jurisdiction over this matter because
10   there is no "case or controversy" before the Court, noting Plaintiff is not currently under
11   an order of removal, either pursuant to § 240 or via the expedited removal procedure.
12   (ECF No. 12 at 3-4). Respondents' assertion that there is no "case or controversy" before
13   the Court is, simply put, specious. Gomez is currently detained by the United States
14   government and § 2241 provides the Court jurisdiction over a petition asserting an
15   individual's detention by the United States government is in violation of United States
16   statutes and/or that individual's federal constitutional rights. As long as Gomez is
17   detained, there is a "case or controversy" properly before the Court.

18         **IV.    Governing Statutory Framework**

19         Congress has approved two statutes which govern the detention of noncitizens
20   pending their removal proceedings, i.e., 8 U.S.C. §§ 1225 and 1226. Section 1225 is
21   titled: "Inspection by immigration officers; expedited removal of inadmissible arriving
22   aliens; referral for hearing." The federal courts have uniformly concluded that, *inter alia*,
23   the use of the word "arriving" indicates that the statute governs noncitizens appearing at
24   the border and not those already present in the United States. *See*, *e.g. Barrera v. Tindall*,
25   No. 25-cv-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025), *citing Pizarro Reyes*
26   *v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025). The
27   title of the statute is instructive and "especially valuable" because it "reinforces what the
28   text's nouns and verbs independently suggest." *Barrera*, 2025 WL 2690565 at *4. Key to

the issues raised in this matter, § 1225 applies to noncitizens who are "applicants for admission," i.e., noncitizens "who [have] not been admitted or who arrive[] in the United States" 8 U.S.C. § 1225(a)(1). Upon arrival at a port of entry, all applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and *beyond a doubt* entitled to be admitted," they "shall be detained for" removal proceedings. *Id.* § 1225(b)(2)(A) (emphasis added). The only exception to the mandatory detention provision of § 1225(b)(2)(A) is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

The second statutory provision, 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," provides for a discretionary detention framework regarding the detention of a noncitizen who is statutorily inadmissible (for example, if they appear at the border without a proper travel document), but may be entitled to admission or withholding of removal, such as a noncitizen who has no criminal history, who has not previously been removed from the United States, and who has stated a credible fear of persecution if removed to the country of their birth. Subsection (a) of § 1226 provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>   (1) may continue to detain the arrested alien; and
>   (2) may release the alien on—
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General ...

The regular removal procedure, as compared to the expedited removal procedure, is initiated by the service of a NTA and referred to as "§ 240 proceedings." Section 240 proceedings involve an evidentiary hearing before an IJ and the opportunity for the individual to apply for asylum if they can show they would be persecuted upon return to their home country. *See* 8 U.S.C. §§ 1229a(a)(1) & 1229(b)(1). Noncitizens seeking asylum are guaranteed due process under the Fifth Amendment throughout this process.

See, e.g., Reno v. Flores, 507 U.S. 292, 306 (1993). Noncitizens arrested and detained under § 1226 have a right to a custody determination (i.e., a bond hearing) before an IJ. See 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

The Secretary of the Department of Homeland Security has the discretion to release a noncitizen on parole during the removal process. As noted *supra*, an arriving immigrant may be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure exists by which the immigrant may be granted conditional parole into the United States pending the adjudication of their § 240 proceedings, i.e., the immigrant may be released on recognizance. *Id.* § 1226(a). *See also Sampiao v. Hyde*, ___ F. Supp. 3d ___, 2025 WL 2607924, at *3 (D. Mass. Sept. 9, 2025).[7] In either situation, releasing a noncitizen from custody requires a case-by-case determination, during which the noncitizen must "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

Succinctly put, pursuant to the governing statutes and regulations, noncitizens detained under § 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under § 1226(a) are entitled to a bond hearing before an IJ at any time before the entry of a final order of removal. *See, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025).

Following the amendment of the INA in 1996, a notice in the Federal Register explained that "[d]espite being applicants for admission, aliens who are *present* without having been admitted or paroled (formerly referred to as aliens who entered without

---

[7] In addition to bond, the government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole. *See* 8 U.S.C. § 1226(a)(2)(B); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("The respondents were ... released on their own recognizance pursuant to [the Department of Homeland Security's] conditional parole authority under ... 8 U.S.C. § 1226(a)(2)(B)[.]"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).") …
*Sampiao v. Hyde*, ___ F. Supp. 3d ___, 2025 WL 2607924, at *3 (D. Mass. Sept. 9, 2025).

inspection) will be eligible for bond and bond redetermination." *Inspection & Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added). However, DHS announced a change to its policies in a memo to ICE employees dated July 8, 2025:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole**. These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

*ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission*, A. IMMIGR. LAW. ASS'N Doc. No. 25071607 (July 8, 2025) (emphasis in original), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission, *quoted in Hinojosa Garcia v. Noem*, No. 25-cv-00879, 2025 WL 3041895, at *4 (M.D. Fla. Oct. 31, 2025). *See also Merino v. Ripa*, No. 25-cv-23845, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) (discussing the memo).

## V.    Analysis

### A.    Gomez's detention is in violation of United States statutory law

Pursuant to § 1225(b)(2)(A), and absent exceptions that are inapplicable here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." *Id.* Respondents contend that Gomez is detained pursuant to this section as an "applicant for admission," by operation of law under § 1225(a)(1), which provides: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United

1    States after having been interdicted in international or United States waters) shall be

2    deemed for purposes of this chapter an applicant for admission." *Id.*

3         Gomez disagrees, arguing that the question of his detention is governed not by

4    § 1225(b)(2)(A) but by § 1226(a), which provides, in pertinent part, that "an alien may be

5    arrested and detained pending a decision on whether the alien is to be removed from the

6    United States. Except as provided in subsection (c) and pending such decision, the

7    Attorney General ... may continue to detain the arrested alien; and ... may release the

8    alien on ... bond of at least $1,500 with security approved by, and containing conditions

9    prescribed by, the Attorney General; or...conditional parole." *Id.*

10         The Government's proposed interpretation of the statute ignores the plain meaning

11    of the phrase "seeking admission." "Seeking" is defined by the Merriam-Webster

12    Dictionary as "asking for" or "trying to acquire or gain." The use of a present participle,

13    "seeking," "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, ___

14    F. Supp. 3d ___, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). Federal statutes

15    define the term "admission" as "the lawful entry of the alien into the United States after

16    inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The

17    term "entry" has long been understood to mean "a crossing into the territorial limits of

18    the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010), *quoting*

19    *Matter of Pierre*, 14 I & N Dec. 467, 468 (1973). Taken together, the phrase "seeking

20    admission" means that one must be actively "seeking" "lawful entry." *Lopez Benitez v.*

21    *Francis*, ___ F. Supp. 3d ___, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025).

22         Gomez is not actively "seeking" "lawful entry" into the United States because he

23    has already entered the United States, with the Government's knowledge and permission,

24    on conditional parole, i.e., recognizance. Gomez seeks to *remain* in the United States.

25    Although immigration law and its terms can be very complicated, there is no need to

26    over-complicate the relevant statutory framework. As the *Lopez Benitez* court noted:

27            [S]omeone who enters a movie theater without purchasing a ticket
        and then proceeds to sit through the first few minutes of a film would not
28            ordinarily then be described as "seeking admission" to the theater. Rather,

that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point — one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [the petitioner], because he has already been residing in the United States for more than two years.

2025 WL 2371588, at *7. *See also Lopez-Campos v. Raycraft*, No. 25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."), *cited in J.A.C.P. v. Wofford*, No. 25-cv-01354, 2025 WL 3013328, at *4 (E.D. Cal. Oct. 27, 2025).

In recent months, numerous federal district courts across the country have confronted the same issue presented herein: is a noncitizen who was initially detained at the border, served with a NTA and released on recognizance into the United States pursuant to § 1226, and then at some point months or years after being present in the United States with the Government's knowledge and acquiescence and without having committed any crime, and then arrested and detained by ICE, being detained pursuant to § 1225 or § 1226? The vast majority, if not all, of the federal district courts confronting this issue have rejected Respondents' argument that such persons are detained under § 1225 because they have not been "admitted" to the United States. The federal district courts have uniformly concluded that noncitizens similarly situated to Gomez, i.e., a noncitizen who entered the United States, and who was released into the United States on their own recognizance after being detained at the border, and who has been living in the United States without committing any crimes, and who has appeared for noticed hearings regarding their § 240 removal proceedings, are detained pursuant to § 1226(a) and are entitled to a bond hearing under that statute.[8] *E.g.*, *Guerrero Orellana v. Moniz*, ___ F.

---

[8] The primary but not controlling distinction between Gomez's situation and the other cases is that Gomez had not yet filed any application for relief from removal, and that his § 240

Supp. 3d ___, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Giron Reyes v. Lyons*, ___F. Supp. 3d ___, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Hasan v. Crawford*, ___ F. Supp. 3d ___, 2025 WL 2682255, at *9 (E.D. Va. Sept. 19, 2025); *Rodriguez*, 779 F. Supp. 3d at 1261 ("Rodriguez has shown that the text of Section 1226, canons of interpretation, legislative history, and longstanding agency practice indicate that he is governed under Section 1226(a)'s 'default' rule for discretionary detention. The Court is persuaded that Rodriguez is likely to succeed on the merits that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision."); *Flores Pineda v. Simon*, No. 25-cv-01616, 2025 WL 2980729, at *2 (E.D. Va. Oct. 21, 2025); *Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Echevarria v. Bondi*, No. 25-cv-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Campos Leon v. Forestal*, 25-cv-1774, 2025 WL 2694763, at *2-5 (S.D. Ind. Sept. 22, 2025); *Barrera*, 2025 WL2690565, *5 ("Courts across the country have been faced with similar questions of law and fact presented by the United States. And every court who has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's. This includes courts within the Sixth Circuit, and across the country."); *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL 2676082, *16 (D. Nev. Sept. 17, 2025) ("In sum, the Court finds that the text and canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance, demonstrate that Petitioner is likely to succeed in establishing he and similarly situated noncitizens are subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A)."); *Pizarro Reyes*, 2025 WL 2609425, at *7 ("The BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation. At least a dozen federal

---

proceedings were dismissed without the Government immediately placing him in expedited removal proceedings.

- 14 -

courts concur generally with this Court's interpretation of the statutory language as applied in this context."). *See also Bautista-Avalos v. Bernacke*, No. 25-cv-01987, 2025 WL 3014023, at \*4-5 (D. Nev. Oct. 27, 2025), *distinguishing Pena v. Hyde*, No. 25-cv-11983, 2025 WL 2108913 (D. Mass. July 28, 2025) *and Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Amigon Sanchez v. Olson*, No. 25-cv-12453, 2025 WL 3004580, at \*3 (N.D. Ill. Oct. 27, 2025) ("In agreement with almost every district court (including this one) to have considered the issue, the court finds that the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice' all lead to the same conclusion: § 1226(a), not § 1225(b)(2), applies to situations … where ICE detains a noncitizen already residing in the United States"), *citing Rodriguez*, 2025 WL 2782499, at \*1 (collecting cases). *See also Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at \*5 (N.D. Ill. Oct. 16, 2025) ("Respondents' argument that § 1225(b)(2)(A) applies to all noncitizens present in the United States without admission, fails. It cites no binding authority and does not grapple with *Jennings*."); *Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at \*3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades support finding that § 1226 applies to these circumstances.") (citation omitted); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at \*5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by Respondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection."); *Garcia Cortes v. Noem*, No. 25-cv-2677, 2025 WL 2652880, at \*2-3 (D. Colo. Sept. 16, 2025); *Salcedo Aceros v. Kaiser*, No. 25-cv-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Kostak v. Trump*, No. 25-cv-01093, 2025 WL 2472136, at \*2-4 (W.D. La. Aug. 27, 2025). This is just a representative sampling of the various federal district courts that have rejected the argument proffered by Respondents in this case.

Moreover, in *Yobani v. Noem*, the Government acknowledged their assertion regarding detention under § 1225 rather than § 1226, in the circumstance of a noncitizen who is present in the United States, has been repeatedly rejected by the federal courts; in that matter the Government averred it was reasserting the repeatedly-rejected argument to preserve the issues for appeal. *See* No. 25-cv-01666, 2025 WL 2997507, at *2 (E.D. Va. Oct. 24, 2025). However, per the history available in Westlaw none of the above-cited cases, nor the cases cited in these opinions, has been appealed by the Government to a Circuit Court of Appeals.[9]

Respondents point to § 1225(a)(1)'s specification that "[a]n alien present in the United States who has not been admitted ... shall be deemed for purposes of this chapter an applicant for admission" and argue that such an alien is therefore an "applicant for admission" for purposes of § 1225(b)(2)(A)'s detention mandate. The courts that have rejected Respondents' argument have reasoned, *inter alia*, as follows:

> The INA defines "admission" and "admitted" to mean, "with respect to [a noncitizen], the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). While an applicant for admission has not been "admitted" to the United States, "it does not follow that [an applicant for admission] continues to be actively 'seeking' ... lawful entry." *Lopez Benitez v. Francis*, ___ F. Supp. 3d ___, 2025 WL 2371588, at *6

---

[9] Per Westlaw, none of the 22 cases decided in August and September of 2025 cited in *Bethancourt Soto* have been appealed, and none of the district court opinions that cite *Rodriguez v. Bostock* (some also cited in *Bethancourt Soto*) have been appealed as of October 30, 2025. A perusal of cases issued from a myriad of federal district courts indicates that the Government has not appealed to a federal Circuit Court of Appeals: (1) any district courts' conclusion that the detention of a noncitizen present in the United States for more than fourteen days (and in some cases years), whose presence is generally pursuant to an initial detention and release on recognizance, is pursuant to § 1226 rather than § 1225; (2) the holding that the federal district courts have jurisdiction to consider § 2241 petitions brought in such cases, notwithstanding § 1252; (3) any federal district court's conclusion that there is no exhaustion requirement in this context before the noncitizen may seek a temporary restraining order or relief pursuant to § 2241. Regardless, Respondents continue to arrest and detain noncitizens described *supra* who are in § 240 proceedings, and continue to contest habeas petitions on the basis of want of jurisdiction and on the "§ 1225 or § 1226" issue already repeatedly decided against the Government. Respondents also continue to release noncitizens from detention or provide them with a bond hearing when ordered to do so.

(S.D.N.Y. Aug. 13, 2025). Here, for example, [the petitioner] is considered an "applicant for admission" under the INA because he is present in the United States but he has not been admitted. But there is no indication he is presently "seeking admission"; i.e., seeking "lawful <u>entry</u> ... into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A) (emphasis added). To the contrary, [the petitioner] "has already 'entered' the country" — he is no longer seeking to enter the United States (lawfully or otherwise). *Lopez Benitez*, 2025 WL 2371588, at *6.

*Jimenez v. FCI Berlin*, ___ F. Supp. 3d ___, 2025 WL 2639390, at *8 (D.N.H. Sept. 8, 2025).

The United States Supreme Court has also addressed in what circumstances § 1225 applies and in what circumstances § 1226 applies. In its 2018 decision in *Jennings v. Rodriguez* the Supreme Court addressed "the proper interpretation of §§ 1225(b), 1226(a), and 1226(c)." 583 U.S. 281, 289 (§ 1226(c) governs criminal aliens). The Supreme Court held: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* The Supreme Court characterized § 1226(a) as the "default rule" governing "the process of arresting and detaining" noncitizens who are already "*inside the United States.*" *Id.* at 288 (emphasis added). The Supreme Court found: "§ 1226 applies to aliens *already present in* the United States. Section 1226(a) creates a *default rule* for those aliens...." *Id.* at 303 (emphasis added). And in the 2019 decision in *Nielsen v. Preap*, the Supreme Court reiterated that § 1226(a) "applies to most [deportable] aliens," "sets out the general rule regarding their arrest and detention pending a decision and removal," and creates a default rule that "[a]liens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided." 586 U.S. 392, 395, 397 (2019). The Ninth Circuit Court of Appeals has squarely held, consistent with *Jennings* and *Nielsen*, that non-criminal noncitizens who are "present" in the United States are entitled to a bond hearing under § 1226(a). *See*

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196-97 (9th Cir. 2022) ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal. ... Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ *at any time before a removal order becomes final*.") (emphasis added).

Until very recently it was well-established that § 1225(b) applied "primarily" to individuals arriving at our nation's borders, ports of entry, or other points of inspection and who were "seeking entry" into the United States. *E.g.*, *Jennings*, 583 U.S. at 285. Comparatively, § 1226 "generally governs the process of arresting and detaining" noncitizens "once inside the United States." *Id.* at 288. "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) ... [and] to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289. Consistent with these interpretations, the Government has, in at least one other court, admitted in that until July 8, 2025, "the predominant form of detention authority for ... noncitizens arrested in the interior of the United States was § 1226(a)." *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *4 & *8 (D.N.J. Oct. 22, 2025) (internal quotations omitted) ("Respondents' policy change "reflects a novel interpretation of the immigration detention statutes," adopted a little over two months ago. *See Martinez*, 2025 WL 2084238, at *4-5 & n.9-11.[10] In *Zumba*, the Government "readily" admitted that if

---

[10] Respondents also argue that discretionary detention under § 1226(a) is limited to those noncitizens who have been admitted to the United States. (Sept. 12 Hearing Tr. at 20:2-10, 25:16-26:5.) In their view, any other reading of § 1226(a) would "in essence, be overruling or invalidat[ing] [§] 1225(b)(2)." (*Id.* at 26:4-5.) This argument is largely undermined by the fact that § 1226(a) does not include any language restricting its application to noncitizens who were admitted to the United States. (*Id.* at 24:22-25:1.) And they concede that prior to the July 8 policy change, § 1226(a) was the "predominant form of detention authority" for those arrested in the interior of the country. (*Id.* at 22:9-11 ("*I don't think there is any doubt that 1226 has been the predominant form of detention authority for folks who are in the country, whether admitted or not*.").)

*Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025). At this time the holding in *Zumba* has not been appealed.

the petitioner had been arrested "on the basis of inadmissibility prior to July 8, 2025, they would have been discretionarily detained under 8 U.S.C. § 1226(a) and eligible for a bond hearing." *Bethancourt Soto*, 2025 WL 2976572, at *3.

> For the past 30 years, the Government has applied § 1226(a) in seeking detention in [the context of noncitizens who are present in the country with the Government's knowledge]. But now that the Government's immigration policy has changed, and § 1225(b)(2)(A) is more favorable, it wants the Court to declare that the historical application of § 1226(a) is incorrect. That, the Court will not do. Respondent simply can't have it both ways. The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that § 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.

*Contreras-Cervantes v. Raycraft*, No. 25-cv-13073, 2025 WL 2952796, at *6 (E.D. Mich. Oct. 17, 2025). *See also Maldonado v. Olson*, ___ F. Supp. 3d ___, No. 25-cv-03142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025).

After Gomez was detained and inspected at the border at Eagle Pass he was released into the United States, in effect paroled into the United States, on recognizance. A custody determination was made at that time that Gomez should not be in custody, citing § 1226. That Respondents moved for dismissal of Gomez's removal proceedings, without initiating some other form of removal proceedings, should not be allowed to place him into some form of legal limbo where he is now deemed to be within the United States without inspection or having been given permission to enter the United States on recognizance, or without having ever been given a bond hearing. This is a particularly egregious limbo when Gomez appears to have a more than colorable claim for asylum.

Respondents argue that Gomez is an "applicant for admission" because he is in the United States without having been "admitted," thereby subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2) and not discretionary detention under 8 U.S.C. § 1226(a). Respondents suggest that because the INA vests the Attorney General with significant discretion when it comes to the enforcement of the immigration laws, the Government's new interpretation of the relevant statutes should be reviewed deferentially. But as the Supreme Court recently emphasized, "courts must exercise

independent judgment in determining the meaning of statutory provisions" and "need not ... defer to an agency interpretation of the law …." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394, 413 (2024). This is particularly true when the agency adopted the opposite interpretation of a statute than currently proffered for nearly three decades. The Court may reject Respondents' argument in accordance with the other federal district courts that have considered this issue.

**B. Gomez's detention violates his right to due process of law**

Gomez's continued detention, without a bond hearing, violates both his substantive and procedural due process rights.

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the very liberty that [the Due Process Clause] protects." *Id.* at 690. The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Accordingly, noncitizens such as Gomez are entitled to its protections. *Id.* To determine what process is due, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail., 424 U.S. at 335.

The first factor weighs heavily in Gomez's favor, as the official action has deprived him of his physical liberty. *E.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)

1    ("[T]he most elemental of liberty interests [is] the interest in being free from physical

2    detention by [the] government."); *Zadvydas*, 533 U.S. at 690.

3    The second *Mathews* factor also weighs heavily in Gomez's favor, as he is

4    presently and erroneously detained under the mandatory detention provisions of § 1225,

5    without an opportunity for a bond hearing. Respondents do not suggest that Gomez

6    would be denied bond if he were afforded such a hearing; there is no credible evidence in

7    the record that Gomez cannot be safely released back to the community.

8    Regarding the third *Mathews* factor, the Government has an interest in detaining

9    noncitizens if this is necessary to ensure their at future immigration proceedings and to

10   prevent danger to the community. *See, e.g.*, *Zadvydas*, 533 U.S. at 690. This factor

11   weighs in Gomez's favor; there are no pending immigration proceedings, as the § 240

12   proceedings have been dismissed. There is no indication that any further NTA has been

13   issued and Respondents assert they are not seeking expedited removal. Gomez has an

14   interest in his pending appeal to the BIA, and Gomez would appear to have a substantial

15   interest in remaining in the United States where he has a colorable claim to asylum.

16   Respondents do not dispute that Gomez has no criminal record, and therefore there is no

17   evidence he is a danger to the community.

18   The public interest also weighs in Gomez's favor. "The public has a strong interest

19   in upholding procedural protections against unlawful detention, and the Ninth Circuit has

20   recognized that the costs to the public of immigration detention are staggering." *Diaz v.*

21   *Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025), *citing*

22   *Jorge M.F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1,

23   2021). *See also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th

24   Cir. 2020) ("It is always in the public interest to prevent the violation of a party's

25   constitutional rights.").

26   Accordingly, the *Mathews* factors weigh decisively in Gomez's favor, and as such

27   his detention, purportedly under § 1225(b)(2)(A), violates his procedural due process

28   rights.

## VI.    Conclusion

The United States Constitution's protections apply to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent. It is well-established that the Due Process Clause imposes a significant constraint on the manner in which the executive branch agencies may exercise their authority, "through detention or otherwise." *Hernandez v. Sessions*, 872 F.3d 976, 990 n.17 (9th Cir. 2017), *citing Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972), *and Zadvydas*, 533 U.S. at 695.

In light of the deprivation of Gomez's liberty, formerly granted and approved by Respondents, and the absence of any deliberative process prior to, or contemporaneous with, the deprivation of his liberty, and the statutory and the Constitutional rights which have been violated by his current detention, a writ of habeas corpus is the appropriate vehicle for relief.

Accordingly,

**IT IS RECOMMENDED that** the petition for habeas relief pursuant to § 2241 be **granted forthwith**.

**IT IS FURTHER RECOMMENDED that** the Court order Respondents to release Gomez from custody under the same conditions that existed before his detention, or provide Gomez a bond redetermination hearing within seven days of the date any order on the § 2241 petition issues.

**IT IS FURTHER RECOMMENDED that** the Court require Respondents to provide a Notice of Compliance within three (3) days of releasing Gomez or providing Gomez with a bond hearing.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties are allowed fourteen

1    (14) days from the date of service of a copy of this recommendation within which to file

2    specific written objections with the Court.

3          Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United

4    States District Court for the District of Arizona, objections to the Report and

5    Recommendation may not exceed ten (10) pages in length. Failure to timely file

6    objections to any factual or legal determinations of the Magistrate Judge will be

7    considered a waiver of a party's right to de novo appellate consideration of the issues. *See*

8    *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

9          Dated this 31st day of October, 2025.

10

11

12

13

14                                              _____
                                                   Camille D. Bibles
15                                              United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28